IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CLIFFORD ALLEN SMITH, § | | |
| TDCJ #576142, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. G-06-0288 | |
| § | | |
| SHERIFF GEAN LEONARD, § | | |
| § | | |
| Defendant. § | | |

# **MEMORANDUM AND ORDER**

State inmate Clifford Allen Smith (TDCJ #576142, former Galveston Inmate #184026) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights while he was in custody at the Galveston County Jail. Smith proceeds *pro se* and he has been granted leave to proceed *in forma pauperis*. The defendant, Galveston County Sheriff Gean Leonard, has filed a motion for summary judgment, arguing that Smith is not entitled to relief. (Doc. # 51). Smith has filed a response. (Doc. # 53). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court **grants** the defendant's motion and **dismisses** this case for reasons that follow.[1]

**I.   BACKGROUND**

Smith is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Smith's pending complaint

---

[1] On October 25, 2007, this case was reassigned pursuant to General Order No. 2007-10 to United States District Judge Melinda Harmon. This case is being handled by the undersigned by agreement of the judges.

concerns the conditions of his confinement at the Galveston County Jail. Smith was arrested and booked into the Galveston County Jail on November 10, 2005, on charges of retaliation. Smith was also charged with theft by check in violation of Texas law.[2] At the time of his arrest on November 10, 2005, Smith was on parole from TDCJ and there was a "blue warrant" pending against him for the revocation of his supervised release. On July 15, 2006, Smith and other inmates were moved to the new Galveston County Jail.[3] On April 17, 2007, Smith was returned to TDCJ for violating his parole. He remains incarcerated at the Wynne Unit in Huntsville, Texas.

The only defendant in this case is Galveston County Sheriff Gean Leonard. Smith blames Sheriff Leonard for a variety of ailments that he reportedly suffered while in custody at both the old and the new Galveston County Jail facilities. Initially, Smith claimed to suffer from assorted symptoms as the result of his exposure to lead paint, asbestos, toxic mold, and

---

[2]  Smith is serving a forty-year prison sentence that was imposed in 1991, as the result of five separate felony convictions for robbery and burglary of a building in Galveston County cause numbers 90-CR-1431, 90-CR-1432, 90-CR-1433, 90-CR-1434, and 90-CR-1435. *See* Texas Department of Criminal Justice, Offender Information, www.tdcj.state.tx.us (last visited April 24, 2008). Smith's history is well known, as he has filed numerous civil actions in this district. *See Smith v. Ratcliff*, Civil No. G-06-0103 (S.D. Tex. July 17, 2006) (dismissing for failure to state a claim); *Smith v. Leonard, et al.*, Civil No. G-06-0179 (S.D. Tex. June 22, 2006) (dismissing as frivolous); *Smith v. Leonard, et al.*, Appeal No. 06-41123 (5th Cir.) (dismissing appeal as frivolous); *Smith v. Leonard, et al.*, G-06-0231 (S.D. Tex. June 22, 2006) (dismissing as frivolous); *Smith v. Radcliffe, et al.*, Civil No. G-06-377 (S.D. Tex. Dec. 5, 2007) (dismissing as frivolous); *Smith v. Apffel*, Civil No. G-06-0446 (S.D. Tex. Dec. 5, 2007) (dismissing as frivolous); *Smith v. Fort Bend County Sheriff's Dep't*, Civil No. H-06-1686 (S.D. Tex. May 26, 2006) (dismissing as frivolous); *Smith v. Leonard, et al.*, Civil No. G-07-0372 (S.D. Tex. Dec. 5, 2007) (dismissing as frivolous); *see also Smith v. Fort Bend County Sheriff's Dep't*, Civil No. H-06-1685 (S.D. Tex.) (pending).

[3]  The old Galveston County Jail is located at 715 19th Street, Galveston, Texas 77550. The county opened a new facility, located at 5700 Avenue H, Galveston, Texas 77551, and all inmates were reportedly transferred there on July 15, 2006.

unsanitary conditions. (Doc. # 1, # 12). Smith's claims were dismissed as frivolous on August 1, 2006. (Docs. # 14, # 17). The Fifth Circuit affirmed the dismissal with the exception of Smith's claim that he suffered physical injury in the form of "headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue" as the result of his exposure to toxic mold, which Sheriff Leonard negligently failed to remove in violation of the Eighth Amendment. *Smith v. Leonard*, No. 06-41290, slip op. at 2 (5th Cir. Aug. 7, 2007).

Sheriff Leonard has filed a motion for summary judgment, asserting that Smith cannot demonstrate a constitutional violation or show that Jail officials treated him with the requisite deliberate indifference. Smith disagrees. The parties' contentions are discussed below under the applicable standard of review.

## II.    STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or

malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must

be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The defendant has filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To survive summary judgment, the nonmovant must submit or identify evidence

in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d

192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

### III. DISCUSSION

Smith complains that he was exposed to toxic mold at the Galveston County Jail in violation of his civil rights. Smith's civil rights complaint is governed by 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish liability under § 1983, a civil rights plaintiff must establish two elements: (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights.") (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir.

1994)). Smith fails to show that he is entitled to any relief under 42 U.S.C. § 1983 for reasons that follow.

### A. Supervisory Liability

Smith sues Sheriff Leonard in his capacity as a supervisory official. A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). Supervisory officials can be held liable only if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted).

Smith does not allege facts showing that Sheriff Leonard had any personal involvement with his claims. Personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and the defendant's conduct. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). In order to successfully plead a cause of

action under 42 U.S.C. § 1983, which governs this case, a civil rights plaintiff must "enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Smith fails to meet that burden here. Likewise, for reasons set forth in more detail below, Smith fails to demonstrate that he was exposed to environmental toxins at the Jail or that there was a causal connection between a particular policy and the alleged hazardous conditions of confinement. Under these circumstances, Smith cannot maintain a civil rights suit against Sheriff Leonard based on a theory of supervisory liability.

### B. Conditions of Confinement

The Fifth Circuit remanded Smith's claim concerning his alleged exposure to toxic mold solely determine whether he could show that the conditions of his confinement violated the Eighth Amendment.[4] *See Smith v. Leonard*, No. 06-41290, slip op. at 2 (5th Cir. Aug. 7, 2007). The Eighth Amendment prohibits the "unnecessary and wanton" infliction of pain.

---

[4] According to the record, a blue warrant alleging that Smith violated the conditions of his release issued on September 20, 2005. Smith was arrested and booked into the Galveston County Jail on November 10, 2005. As a parole violator, Smith occupied the position of a pretrial detainee during his incarceration at the Galveston County Jail. *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996). A pretrial detainee's challenge to the conditions of his confinement ordinarily implicates the Fourteenth Amendment Due Process Clause, which requires that conditions of confinement satisfy certain minimal standards for pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520 (1979). In that respect, the Due Process Clause prohibits conditions of confinement that are imposed for the purpose of punishment. *Bell*, 441 U.S. at 538. Because Smith does not allege or show that he was subjected to unconstitutional conditions of confinement for punitive purposes, he does not demonstrate a violation of the Due Process Clause. Detained parolees who cannot support a claim of unconstitutional conditions under the Fourteenth Amendment may also seek relief under the Eighth Amendment because "[t]he constitutional rights of parolees are at least as extensive as those of convicted prisoners." *Hamilton*, 74 F.3d at 106 n.8.

*Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to keep inmates safe from conditions that pose a substantial risk of serious harm and requires that prisoners be afforded "humane conditions of confinement," including adequate food, shelter, clothing, and medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994). The Eighth Amendment also protects prisoners from conditions that pose an unreasonable risk of damage to an inmate's future health, such as exposure to environmental toxins. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (establishing a two-prong test to determine whether exposure to second-hand or environmental tobacco smoke ("ETS") violates a prisoner's Eighth Amendment rights). To prevail, a prisoner must demonstrate that he has been exposed to "unreasonably high levels" of toxins and that prison authorities demonstrated a "deliberate indifference" to the prisoner's plight. *Id.*; *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001).

The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847).

Sheriff Leonard argues that Smith fails to show that Jail officials were deliberately indifferent to a substantial risk of serious harm or that his conditions of confinement

otherwise posed a constitutional violation because there is no evidence that there was toxic mold in either the old or new Galveston County Jail when Smith was in custody at those facilities.  In support of that argument, Sheriff Leonard provides an affidavit from Ronald Schultz, who is Director of Environmental Health Programs for the Galveston County Health District.  (Doc. # 51, *Schultz Affidavit*).  Schultz, who has special training in the detection of potential risks to human health posed by sources of air and water pollution, explains that people are generally exposed to mold on a regular basis because it is present in the environment.  (*Id.* at 1).  Schultz notes, however, that "only a few types of mold pose an actual hazard to human health." (*Id.*).  Schultz explains that, according to the Center for Disease Control, the growth of hazardous mold requires an environment that is wet or very damp along with "a porous surface on which the mold could grow." (*Id.*).  Schultz maintains that the conditions in both the old and the new Galveston County Jail do not fit those requirements. (*Id.*).

    Schultz examined the pod at the old Galveston County Jail, where Smith was in custody prior to July 15, 2006, and noted that there was no porous areas in the cell or in the vicinity of the pod.  (*Id*. at 1-2).  In examining that location, Schultz found "a small amount of mildew on the shower curtain and around the base of the shower itself, as well as some on the ceiling of the cell," but no hazardous mold that could be deemed toxic.  (*Id.* at 2).  Schultz also examined the pod occupied by Smith at the new Galveston County Jail after July 15, 2006, and found that the conditions were "pristine." (*Id.* at 3).  Specifically, Schultz found that there was "no presence of mold anywhere" and, further, that "there was no area

conducive to the growth of toxic mold in the pod." (*Id.*). Based on his examination of the old and new Galveston County Jails, Schultz concludes that there was no hazardous mold present when Smith was in custody at these facilities.[5]

Sheriff Leonard also presents an affidavit from Michael Henson who is Commander of the Corrections Division of the Galveston County Sheriff's Department and who is in charge of the Galveston County Jail. (Doc. # 51, *Henson Affidavit*). Henson provides a copy of Galveston County Sheriff's Office Manual of Policy and Procedures, GC No. 400.11, which governs inmate hygiene. (*Id.*, Exhibit). According to this policy, all inmates are expected to maintain a sanitary living condition in their units and to keep themselves clean. (*Id.*). Henson explains that all inmates have access to cleaning supplies. (*Id.*). If hazardous mold had been present, the cleaning supplies given to the inmates would have been enough to eliminate any attendant risk.[6] (*Id.*). In support of Henson's assessment, Schultz agrees

---

[5] Schultz inspected the old and new Galveston County Jail facilities for mold in February of 2008. Schultz notes that he inspected the old Galveston County Jail previously in April 27, 2006, in response to a complaint by Smith about the presence of lead-based paint at the old Galveston County Jail. (Doc. # 51, *Schultz Affidavit*, Exhibits - Inmate Grievance; Report by Ronald Schultz). Smith did not complain about mold in that grievance and Schultz's inspection did not reveal the presence of any lead-based paint. (*See id*.). Schultz clarifies that, although the old Galveston County Jail is no longer in use, the facility is unoccupied and "remains virtually unchanged" since his previous inspection in April of 2006. (Doc. # 51, *Schultz Affidavit* at 2).

[6] Smith acknowledges that he had access to cleaning supplies. (Doc. # 53, at 4). He further acknowledges that disciplinary charges were filed against him on two occasions after officials caught him using cleaning supplies to remove ink from stamps for the purpose of reusing them. (*Id.*; *see also* Doc. # 51, Exhibit A, Galveston County Jail Disciplinary Hearing Records and Inmate Incident Reports, at 26-28, 30-35).

that, given the type of cleaning solution used at the Jail, any potential hazard posed by mold would have been "practically eliminated." (Doc. # 51, *Affidavit of Ronald Schultz*).

In his response to the summary judgment motion, Smith complains that Henson's affidavit is insufficient to show that there was no mold, but he does not refute the findings made by Schultz. (Doc. # 53). Smith presents nothing further in support of his claim. Based on this record, there is no evidence establishing that Smith was exposed to any toxic mold while in custody of Galveston County, much less "unreasonably high levels" of such mold. *Helling*, 509 U.S. at 35. Likewise, there is no evidence in the record that Galveston County Jail officials were deliberately indifferent to Smith's health and safety or that he was somehow exposed to toxic conditions of confinement that posed an unreasonable risk of damage to his future health. *See id.* Smith's conclusory allegations are not sufficient to raise a genuine issue of material fact. *See Scott v. Edwards*, Civil No. 8:06-3484, 2008 WL 80138, *4 (D.S.C. Jan. 7, 2008) (holding that a prisoner's conclusory allegations of headaches, respiratory difficulties, and throat irritation due to mold and mildew exposure are not sufficient to overcome a motion for summary judgment). Because Smith does not raise a genuine issue of material fact on these issues, he fails to satisfy the requisite criteria for making an Eighth Amendment claim in this case. Absent a showing that the conditions of confinement posed a constitutional violation, Sheriff Leonard is entitled to summary judgment in his favor and the complaint must be dismissed.[7]

---

[7] Sheriff Leonard argues further that Smith cannot recover monetary damages in this instance, pursuant to 42 U.S.C. § 1997e(e), because he fails to demonstrate that he suffered the
(continued...)

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendant's motion for summary judgment (Doc. # 51) is **GRANTED**.

2. The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED on April 28th, 2008.

_____
Nancy F. Atlas
United States District Judge

---

[7](...continued)
requisite physical injury as a result of the conditions of his confinement. To recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. *See* 42 U.S.C. § 1997e(e); *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003, *cert. denied*, 541 U.S. 1012 (2004). Smith alleges that he suffered physical injury in the form of "headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue" as the result of his exposure to toxic mold. Several courts have concluded that sinus congestion, headaches, and eye irritation due to mold and mildew exposure constitutes *de minimis* harm, if anything, and is not sufficient to demonstrate the requisite physical injury for purposes of 42 U.S.C. § 1997e(e). *See Mayes v. Travis State Jail*, Civil No. A-06-CA-709, 2007 WL 1888828, **4-5 (W.D. Tex. June 29, 2007) (citing *Gill v. Shoemate*, Civil No. A-05-CV-2124, 2006 WL 1285412, *5 (W.D. La. May 8, 2006); *Smith v. Fox*, Civil No. 4:05-CV-1554, 2006 WL 2090170, *6 (D.S.C. July 25, 2006)); *see also Vega v. Hill*, Civil No. 3-05-CV-1577, 2005 WL 3147862 (N.D. Tex. Oct. 14, 2005) (finding that conclusory allegations of "bad headaches, sleeplessness," and "dizziness" due to exposure was insufficient to establish a physical injury that was more than *de minimis*). Because Smith has failed to show that toxic mold was present in the Galveston County Jail at the time he was in custody there, the Court declines to address this issue further.

14